No. 21-6816

# IN THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

TIMOTHY S. WISE,

  PLAINTIFF-APPELLANT,

v.

C. MARUKA ET AL.,

  DEFENDANTS-APPELLEES.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA (1:20-CV-00056)

## OPENING BRIEF OF PLAINTIFF-APPELLANT TIMOTHY S. WISE

Samuel Weiss
RIGHTS BEHIND BARS
416 Florida Avenue NW
Suite 26152
Washington, DC 20001
(202) 455-4399

David M. Zionts
David J. Cho
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
(202) 662-6000

*Counsel for Plaintiff-Appellant Timothy S. Wise*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __21-6816__     Caption: __Timothy Wise v. C. Maruka__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Timothy Wise__
(name of party/amicus)


who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO


2.    Does party/amicus have any parent corporations?                ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:




3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                      ☐YES ☑NO
      If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?      ☐YES ☑NO
If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)     ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?     ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.      Is this a criminal case in which there was an organizational victim?     ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Samuel Weiss                Date:    7/1/2021

Counsel for: Timothy Wise

Print to PDF for Filing

# TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................... i

TABLE OF AUTHORITIES .............................................................. iii

INTRODUCTION ............................................................................1

JURISDICTIONAL STATEMENT .......................................................3

STATEMENT OF ISSUES ................................................................4

STATEMENT OF THE CASE..............................................................4

I.   Officer Cook Physically Beat Mr. Wise, Caused Excruciating Pain on His
     Wrists and Back by Slamming Him Down, and Left Him Painfully Strapped on
     a Gurney for Hours. ...............................................................4

II.  Mr. Wise Asserted an Excessive Force Claim Under *Bivens*, Which the District
     Court Agreed Was Available but Concluded That Mr. Wise Failed to State a
     Claim For Relief. ..................................................................8

SUMMARY OF ARGUMENT .........................................................12

STANDARD OF REVIEW ..............................................................15

ARGUMENT .............................................................................16

I.   The District Court Correctly Ruled That an Eighth Amendment Excessive
     Force Claim Is Cognizable Under *Bivens*..........................................16

     A. An Excessive Force Claim Does Not Present a New Context. ..................19

     B. Even If This Case Presents a Modest Extension of *Bivens*, No Special
        Factors Counsel Hesitation Before Recognizing a Remedy for a
        Prison Officer Wantonly Beating and Inflicting Excruciating Pain On A
        Prisoner. .......................................................................24

II.  Mr. Wise's Complaint Sufficiently Pleads That Officer Cook Applied
     Excessive Force in Violation of the Eighth Amendment. ...........................31

     A. Mr. Wise's Allegations Establish That Officer Cook's Conduct Was
        Objectively "Harmful Enough."................................................32

B. Mr. Wise's Allegations Support a Reasonable Inference That Officer Cook Acted "Maliciously and Sadistically" to Harm Him. ..................................33

C. The District Court Erred By Failing to Consider the Whole Complaint And Engaging in Improper Fact-Finding at the Pleading Stage. ........................40

    1. The District Court Improperly Considered Only the Handcuffing Allegation in the Second Amended Complaint....................................40

    2. The District Court Engaged in Improper Fact-Finding After Considering Extrinsic Evidence at the Pleading Stage. ........................42

CONCLUSION .......................................................................................................46

REQUEST FOR ORAL ARGUMENT .................................................................47

CERTIFICATE OF COMPLIANCE.....................................................................48

CERTIFICATE OF SERVICE ..............................................................................49

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ...............................................................................40

*Bistrian v. Levi*,
    912 F.3d 79 (3d Cir. 2018) ...........................................................*passim*

*Bivens v. Six Unknown Fed. Narcotics Agents*,
    403 U.S. 388 (1971)........................................................................*passim*

*Brooks v. Johnson*,
    924 F.3d 104 (4th Cir. 2019) .......................................................*passim*

*Carlson v. Green*,
    446 U.S. 14 (1980)..........................................................................*passim*

*Clifton v. Miller*,
    139 F.3d 901 (7th Cir. 1998) (unpublished) .....................................23

*Dean v. Jones*,
    984 F.3d 295 (4th Cir. 2021) ....................................................37, 44

*Dunlap v. Fields*,
    221 F.3d 1334 (6th Cir. 2000) (unpublished) ...................................23

*Earle v. Shreves*,
    990 F.3d 774 (4th Cir. 2021) ..........................................................17

*Erickson v. Pardus*,
    551 U.S. 89 (2007)...........................................................................16

*Estelle v. Gamble*,
    429 U.S. 97 (1976) ..........................................................................16

*Farmer v. Brennan*,
    511 U.S. 825 (1994)........................................................................*passim*

*Green v. Corr. Corp. of Am.*,
    401 F. App'x 371 (10th Cir. 2010) ...................................................23

*Harrell v. Freedom Mortg. Corp.*,
    976 F.3d 434 (4th Cir. 2020) .................................................16, 43

*Hernandez v. Mesa*,
    137 S. Ct. 2003 (2017)...............................................................16

*Hernandez v. Mesa*,
    140 S. Ct. 735 (2020)............................................................*passim*

*Hicks v. Ferreyra*,
    965 F.3d 302 (4th Cir. 2020) .................................................18, 24

*Hill v. Crum*,
    727 F.3d 312 (4th Cir. 2013) .............................................................22

*Hill v. O'Brien*,
    387 F. App'x 396 (4th Cir. 2010) .........................................22, 23

*Hope v. Pelzer*,
    536 U.S. 730 (2002) ...........................................................35

*Hudson v. McMillian*,
    503 U.S. 1 (1992) .....................................................*passim*

*Iko v. Shreve*,
    535 F.3d 225 (4th Cir. 2008) ................................................*passim*

*Jacobs v. Alam*,
    915 F.3d 1028 (6th Cir. 2019) ........................................................24

*Lanuza v. Love*,
    899 F.3d 1019 (9th Cir. 2018) .........................................................18

*Lineberry v. Johnson*,
    No. 17-cv-04124, 2018 WL 4232907 (S.D. W. Va. Aug. 10, 2018) ...............10

*Loftus v. Bobzien*,
    848 F.3d 278 (4th Cir. 2017) ...............................................................4

*Mack v. Yost*,
    968 F.3d 311 (3d Cir. 2020) ...............................................................28

*McCarthy v. Madigan*,
    503 U.S. 140 (1992) ....................................................................27, 28

*Miles v. Apex Marine Corp.*,
    498 U.S. 19 (1990) ...............................................................................26

*Nolte v. Cap. One Fin. Corp.*,
    390 F.3d 311 (4th Cir. 2004) .............................................................44

*Norman v. Taylor*,
    25 F.3d 1259 (4th Cir. 1994) .......................................................21, 22

*Porter v. Nussle*,
    534 U.S. 516 (2002) .............................................................26, 27, 30

*Pumphrey v. Coakley*,
    No. 15-cv-14430, 2018 WL 1359047 (S.D. W. Va. Mar. 16, 2018) ................10

*Ray v. Roane*,
    948 F.3d 222 (4th Cir. 2020) ....................................................*passim*

*Reid v. United States*,
    825 F. App'x 442 (9th Cir. 2020) ......................................................23

*Santiago v. Fields*,
    490 F. App'x 479 (3d Cir. 2012) .......................................................23

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007) ............................................................2, 40, 42

*Thompson v. Virginia*,
    878 F.3d 89 (4th Cir. 2017) ....................................................*passim*

*Tobey v. Jones*,
  706 F.3d 379 (4th Cir. 2013) .......................................................*passim*

*Tun-Cos v. Perrotte*,
  922 F.3d 514 (4th Cir. 2019) ...........................................20, 29, 31

*Whitley v. Albers*,
  475 U.S. 312 (1986) ......................................................*passim*

*Williams v. Calton*,
  551 F. App'x 50 (4th Cir. 2013) .......................................23

*Wilkins v. Gaddy*,
  559 U.S. 34 (2010) ......................................................*passim*

*Wood v. Moss*,
  572 U.S. 744 (2014) .....................................................16

*Zak v. Chelsea Therapeutics Int'l, Ltd.*,
  780 F.3d 597 (4th Cir. 2015) ..........................................41

*Ziglar v. Abbasi*,
  137 S. Ct. 1843 (2017).................................................*passim*

## Statutes

28 U.S.C. § 1291 ..........................................................4

28 U.S.C. § 1331 ..........................................................3

28 U.S.C. § 1915A .........................................................8, 29

42 U.S.C. § 1997e .........................................................26, 27, 30

28 C.F.R. § 541.3 .........................................................22, 30

28 C.F.R. § 541.5 .........................................................21, 30

## Other Authorities

Fed. R. App. P. 4(a)(1)(B)(iv)............................................3

Fed. R. Civ. P. 10(c) ....................................................................4

Fed. R. Civ. P. 12(b)(6) ........................................................*passim*

**Legislative Materials**

42 Cong. Rec. S2285 (Mar. 19, 1996) ....................................28

141 Cong. Rec. H14078 (Dec. 6, 1995) ................................28

# INTRODUCTION

While in federal custody, Timothy Wise was physically beaten, slammed down, and strapped on a gurney in an excruciating position for hours by a correctional officer in response to Mr. Wise suffering a seizure. Mr. Wise alleges that in September 2019, in responding to a distress call, Officer Cook appeared at Mr. Wise's cell and physically beat him. Another inmate informed Officer Cook that Mr. Wise was having a seizure, but the officer cried "B.S. he's on drugs." The officer then tightly handcuffed Mr. Wise, flipped him over in the air, and slammed him down on a gurney, causing serious pain on his wrists and back by the handcuffs that the officer did not properly secure using standard procedure. Officer Cook strapped and padlocked Mr. Wise on the gurney so he could not move to alleviate his pain for hours, without permitting any medical attention for his seizure. For the harm he suffered on that day, Mr. Wise filed pro se a claim for use of excessive force under *Bivens v. Six Unknown Federal Narcotics Agent*, 403 U.S. 388 (1971).

The district court correctly concluded that there is such a remedy under *Bivens*, rejecting Officer Cook's argument to the contrary. But the district court concluded that Mr. Wise failed to state an excessive force claim on the ground that Officer Cook did "not exhibit intentional malicious conduct" because the officer's use of handcuffs in transporting a prisoner was "reasonable" and failure to properly

secure the handcuffs was "not unreasonable." J.A. 275. The district court thus dismissed Mr. Wise's claim.

This case presents a straightforward misapplication of the motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6). In dismissing his claim, the district court disregarded Mr. Wise's allegations that Officer Cook physically beat him and inflicted excruciating pain by slamming him down on a gurney from midair even though he was not combative at all. The pain on Mr. Wise's wrists and back was amplified by pressure from the handcuffs that Officer Cook did not properly secure to prevent them from ratcheting down on his wrists. The district court also disregarded the allegations that Officer Cook left Mr. Wise strapped in this painful position for hours without medical attention, despite his seizure and pleas for relief from pain. Rather, the court focused only on the abstract question of whether it was reasonable for an officer to use handcuffs without properly securing them to move an inmate from one location to another. The district court thus erred by failing to "consider the complaint in its entirety" as required "when ruling on Rule 12(b)(6) motions to dismiss." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007). And because it did not consider the whole complaint, the district court failed to draw all reasonable inferences in favor of Mr. Wise, which together amply support a claim for unconstitutionally excessive force.

The district court also erred by engaging in fact-finding and drawing inferences against Mr. Wise at the pleading stage. To draw negative inferences, it improperly considered documents outside the complaint to speculate that Mr. Wise was a drug user and doubt that he suffered a seizure. And even if it were somehow proper for the district court to go beyond the complaint, the extrinsic evidence does not negate the allegations that Officer Cook physically beat Mr. Wise and inflicted excruciating pain on him throughout the process of restraining and leaving him on a gurney. Mr. Wise pleads egregious abuse of a non-resisting prisoner suffering a medical incident to state an Eighth Amendment claim, and it does not matter at all whether the medical incident was prompted by a seizure or some other cause. The district court could not properly grant a motion to dismiss just because it doubted Mr. Wise's claim and base its decision on fact-finding concerning the propriety of the officer's conduct. This Court should reverse the district court's judgment.

## JURISDICTIONAL STATEMENT

The district court had original jurisdiction over Mr. Wise's action under 28 U.S.C. § 1331, because his excessive force claim arose under the Eighth Amendment of the U.S. Constitution.

The district court entered final judgment on March 25, 2021, upon dismissing all claims in Mr. Wise's complaint. J.A. 295–96. Mr. Wise filed a timely notice of appeal on May 21, 2021. J.A. 297; *see also* Fed. R. App. P. 4(a)(1)(B)(iv). This

Court has appellate jurisdiction under 28 U.S.C. § 1291 over the district court's final judgment on the dismissal of Mr. Wise's complaint.

## STATEMENT OF ISSUES

1. Whether there is a remedy for use of excessive force by a line-level federal prison officer in violation of the Eighth Amendment under *Bivens*.

2. Whether the district court erred by granting a motion to dismiss Mr. Wise's excessive force claim, where he alleged needless beating, body slamming, and application of painful restraints by Officer Cook but it failed to consider all allegations and draw reasonable inferences in Mr. Wise's favor and it improperly engaged in fact-finding to conclude that the officer's use of force was reasonable.

## STATEMENT OF THE CASE

**I. Officer Cook Physically Beat Mr. Wise, Caused Excruciating Pain on His Wrists and Back by Slamming Him Down, and Left Him Painfully Strapped on a Gurney for Hours.**

The facts presented here are based on the factual allegations in the Second Amended Complaint (J.A. 12–50) and Mr. Wise's declaration (J.A. 51–86) attached as an exhibit to the complaint, which must be accepted as true at the motion to dismiss stage. *Loftus v. Bobzien*, 848 F.3d 278, 281 n.1 (4th Cir. 2017); *see also* Fed. R. Civ. P. 10(c).

Timothy Wise was an inmate who arrived at the Federal Correctional Institution, McDowell in West Virginia on July 23, 2019. J.A. 31, 56. During his medical

intake screening, Mr. Wise informed Nurse Alexander that he had a history of seizures. J.A. 31, 56–57. Mr. Wise had a seizure disorder and he had been on anti-seizure medication, Tegretol and Oxcarbazepine, until the seizures went into remission. J.A. 31, 57. Because the seizures had begun to recur, Mr. Wise requested to be put back on anti-seizure medication. *Id.* Nurse Alexander confirmed Mr. Wise's seizure history in his medical file, and issued multiple copies of a bottom bunk medical restriction due to his seizure condition for Mr. Wise to provide to his cell unit office and on-duty unit correctional officers. *Id.* The purpose of the bunk restriction was to reduce injury in the event of a seizure. Nurse Alexander also told Mr. Wise to wait for an appointment to be set up with C. Carothers at the medical department concerning his seizure condition. *Id.*

In September 2019, Mr. Wise suffered a seizure and the duress button in his cell was activated. J.A. 35, 58. Correctional Officer Cook responded to Mr. Wise's cell, and with other yet to be identified officers, "attacked [Mr. Wise] physically" and "beat[]" him. J.A. 58; J.A. 36. Another inmate told Officer Cook that Mr. Wise was "[h]aving a seizure." J.A. 35–36, 58. Officer Cook told the other inmate, "B.S. he's on drugs," despite having a copy of Mr. Wise's bunk restriction and seizure condition. J.A. 58; J.A. 31, 35–36, 57. After the beating, Officer Cook handcuffed Mr. Wise behind the back. J.A. 36, 58. The officer did not, however, follow standard procedure of double-locking the handcuffs, which prevents them from ratcheting

down too tightly on the wrists. *Id.* The officers then shackled Mr. Wise's legs and carried him outside the cell face down. *Id.* Throughout this encounter, Mr. Wise was "at no time . . . resisting" or "combative." *Id.* He pleaded to Officer Cook: "I had a seizure, I'm not resisting, why are you doing this to me?" J.A. 58.

Instead of answering Mr. Wise's question, Officer Cook and the other officers then flipped Mr. Wise in midair and slammed him down hard on his back onto a gurney. J.A. 36, 58. Because he was handcuffed with his hands behind his back, this slamming action forced Mr. Wise's entire body weight to "ratchet[] the [metal] cuffs down on [the] skin and bone crushingly, with [the] hands and metal cuffs digging into [his] lower back painfully." *Id.* The slamming action caused a ratcheting of the handcuffs to "brutally cut[] [the] skin and bruising to the bones." J.A. 58. Mr. Wise "screamed because of the immediate and excruciating pain." J.A. 58–59. Despite Mr. Wise's tears and pleas for relief, Officer Cook and the others wound a strap over his body and legs and padlocked the strap, continuing to force the painful pressure caused by the tightened handcuffs onto his wrists and back. J.A. 59. The padlock "prevent[ed] [Mr. Wise] from moving or alleviating the pressure and horrible pain in [his] wrists and back at all." *Id.*

Officer Cook and the others wheeled Mr. Wise on the gurney across the compound to the lieutenant's office. J.A. 59. He was left strapped and padlocked on the gurney for about two hours without being seen by medical staff for his seizure. *Id.*;

J.A. 36. Mr. Wise begged for relief from the pain caused by the metal cuffs. J.A. 59. When he pleaded that "I had a seizure, why are you doing this to me, please loosen the cuffs[,] my hands are hurting so bad," he was "mocked, laughed at," and called a "drug addict," "junkie," and "clown," despite the fact that his seizure condition was in his medical file and he had a medical bottom bunk restriction. *Id.* Mr. Wise's pleas were ignored, and he "was never seen by anyone from the . . . medical staff" for his seizure or pain. *Id.* He was placed in a special housing unit for over two weeks. J.A. 36, 59.

No drugs were found in Mr. Wise's cell and he "tested negative for drugs immediately after the incident." J.A. 60. Officer Cook nonetheless wrote an incident report for drug use concerning the September 2019 seizure incident. *Id.* A disciplinary hearing officer reviewed Mr. Wise's case and expunged Officer Cook's incident report.[1] *Id.*

Mr. Wise alleges that Officer Cook was vocal to other staff and inmates about his purported drug use to cover up the "[officer's] own wrong doing" (i.e., beating and inflicting pain in September 2019 despite Mr. Wise's seizure). J.A. 36, 60–61. Thereafter, prison officers harassed Mr. Wise, accusing him of being a drug user. For example, in October 2019, officers whom Mr. Wise has not yet been able to

---

[1] Mr. Wise has not yet had the opportunity to discover the full record concerning the incident report, disciplinary hearing, and expungement of the report.

identify woke up Mr. Wise for no reason. J.A. 37, 62. They "grabbed his hands and yanked his arms up and behind him until it felt like the shoulders would pop from their sockets," causing so much pain that it caused him to "lose control of his bladder." *Id.* The officers "laugh[ed]," and one mocked him, saying "let me guess, you're having another seizure." *Id.* They took him for a drug screen urinalysis test, which returned negative. *Id.* Nevertheless, Mr. Wise was placed in the special housing unit for about 30 days. J.A. 37.

## II. Mr. Wise Asserted an Excessive Force Claim Under *Bivens*, Which the District Court Agreed Was Available but Concluded That Mr. Wise Failed to State a Claim For Relief.

On January 24, 2020, Mr. Wise filed suit pro se in the U.S. District Court for the Southern District of West Virginia. J.A. 1. After he filed a First Amended Complaint, the magistrate judge issued a screening order under 28 U.S.C. § 1915A, concluding that Mr. Wise "made ample allegations of unconstitutional conduct." J.A. 10. On April 14, 2020, the district court granted Mr. Wise's request to file the operative Second Amended Complaint. J.A. 3–4. While the United States then moved for screening of that complaint under § 1915A, the magistrate judge denied the motion because he had already determined that Mr. Wise's complaint "as a whole was not frivolous, malicious" and did not "fail[] to state a claim upon which relief could be granted." J.A. 88.

In the Second Amended Complaint, Mr. Wise asserts various claims, including violations of the Eighth Amendment's prohibition against cruel and unusual punishment. *See generally* J.A. 12–86. In particular, Mr. Wise alleges that Officer Cook applied excessive force during his seizure incident in September 2019, in violation of the Eighth Amendment. *See, e.g.*, J.A. 35–36, 58–61.

Before an answer or any discovery, Defendants filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment. J.A. 90. Defendants moved for summary judgment on the ground that Mr. Wise failed to exhaust administrative remedies. J.A. 91 ¶ 2; Brief of Defendants at 9–10, *Wise v. Maruka*, No. 20-cv-00056 (S.D. W. Va. July 1, 2020), ECF No. 73 [hereinafter Defs.' Br.]. They also moved to dismiss for failure to state a claim, arguing that there is no cognizable *Bivens* claim for excessive force by a federal officer (Defs.' Br. 15; J.A. 91 ¶ 3), and challenging the "sufficiency of the pleadings" to contend that the complaint "fail[ed] to state a claim of excessive force" (Defs.' Br. 9, 26, 30; J.A. 91 ¶ 8).[2]

In his Proposed Findings and Recommendation, the magistrate judge rejected Defendants' request for summary judgment for failure to exhaust administrative

---

[2] After Defendants filed their motion, Mr. Wise was released from custody under a compassionate release in July 2020. *See* J.A. 289 n.2; Notice of Change of Address, *Wise v. Maruka*, No. 20-cv-00056 (S.D. W. Va. July 8, 2020), ECF No. 75.

remedies. J.A. 241–51. The magistrate judge also determined that an Eighth Amendment excessive force claim is a cognizable *Bivens* claim. J.A. 262. In doing so, the magistrate judge adopted the reasons in *Pumphrey v. Coakley*, No. 15-cv-14430, 2018 WL 1359047 (S.D. W. Va. Mar. 16, 2018), *vacated on other grounds* 2019 WL 5390015 (S.D. W. Va. Oct. 21, 2019) and *Lineberry v. Johnson*, No. 17-cv-04124, 2018 WL 4232907 (S.D. W. Va. Aug. 10, 2018), which both held that the plaintiff's Eighth Amendment excessive force claim did not present a new *Bivens* context and that, even if it were, such a claim would not be an improper expansion of *Bivens*.

The magistrate judge nonetheless recommended granting the motion to dismiss the excessive force claim. J.A. 274–75. The magistrate judge found that Mr. Wise "failed to state a cognizable claim of excessive force," faulted the complaint for lacking "sufficient detail to put a defendant on notice of [a] claim against him," and faulted Mr. Wise for failing to identify specific "officer reports" that he said will prove his claim even though no discovery occurred. J.A. 274.

In dismissing the claim against Officer Cook, the magistrate judge reasoned that (1) "the prison staff had evidence indicating that [he] was a known drug user within the prison"; (2) "symptoms caused by a seizure can be very similar to negative side effects caused by drug use"; (3) "the undersigned cannot find that the

application of handcuffs on an inmate, when it [wa]s unclear whether he was experiencing side effects from drug use or a seizure, to be unreasonable"; (4) "[i]t is reasonable that the application of handcuffs [wa]s necessary and appropriate under these circumstances when moving an inmate from one area of a prison to another"; (5) "there is no indication that Defendant Cook intentionally applied the handcuffs too tightly"; and (6) "[g]iven the circumstance of the situation that required immediate medical attention, it is not unreasonable that Defendant Cook might not take the time or effort to double lock handcuffs." J.A. 275. However, although initially noting that Officer Cook carried Mr. Wise and then slammed him on a gurney, the magistrate judge did not consider those allegations in his analysis. *See* J.A. 274–75. Nor did the magistrate judge consider the allegations that Officer Cook beat Mr. Wise before handcuffing, or that Officer Cook left Mr. Wise painfully strapped and padlocked on the gurney for about two hours. *See id.* The magistrate judge then found that Officer Cook "d[id] not exhibit intentional malicious conduct" as required by an excessive force claim, and recommended granting the motion to dismiss as to that claim. J.A. 275.

Mr. Wise timely objected to the magistrate judge's Proposed Findings and Recommendation. J.A. 286–87. The district court reviewed the docket and the Proposed Findings and Recommendation, and concluded that "the Magistrate Judge has carefully considered the issues, been attentive to the arguments raised by both sides,

and has reached the correct conclusion regarding the disposition of this case."
J.A. 293. The district court adopted the magistrate judge's recommendation on all
issues, dismissing all claims in the case, J.A. 293–94 & n.3, and entered final judg-
ment on March 25, 2021, J.A. 295–96. Mr. Wise timely filed a notice of appeal on
May 21, 2021. J.A. 297.

## SUMMARY OF ARGUMENT

1. The district court was correct that a *Bivens* remedy is available for an ex-
cessive force claim under the Eighth Amendment. Such a claim arises in a familiar,
well-established *Bivens* context—it does not require recognition of any new *Bivens*
claim. Mr. Wise's case does not present a new *Bivens* context because it does not
meaningfully differ from the contexts in *Bivens* and *Carlson v. Green*, 446 U.S. 14,
19 (1980). Like in those cases, Mr. Wise's claim is asserted against rank-and-file
officers and involves identical or similar constitutional rights. His claim is also di-
rected to specific acts of individual officers as in *Bivens* and *Carlson*. There are no
special factors present that make Mr. Wise's case meaningfully different from es-
tablished *Bivens* cases, and Officer Cook could identify none before the district
court.

Even if this case did present a new context, no special factors counsel hesita-
tion before recognizing a remedy for the constitutional violation that Mr. Wise
suffered. It is well established that the judiciary can appropriately entertain damages

claims for excessive force committed by a line-level federal officer. This case does not require a court to interfere with any legislation or executive policy. Rather, Mr. Wise seeks liability of an individual officer over a specific incident in a familiar setting for *Bivens*, *i.e.*, physical abuse of a prisoner. This kind of situation is what the Supreme Court has recognized to give rise to an implied cause of action in *Bivens* and *Carlson*. Nor did his claim directed to a rank-and-file officer's specific conduct impact government operations on a system-wide level such as national security or foreign relations such as those at issue in *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017) and *Hernandez v. Mesa*, 140 S. Ct. 735 (2020).

Mr. Wise has no adequate, alternative remedy for the harm that he suffered from Officer Cook's excessive force. A *Bivens* remedy must be available for Mr. Wise's claim that a prison officer subjected him to unnecessary and wanton pain when he had suffered a seizure—this is a case of damages or nothing.

2. Mr. Wise pleads sufficient factual allegations that Officer Cook violated the Eighth Amendment by applying excessive force. He adequately pleads that the officer's force was objectively harmful enough because it was beyond *de minimis* force. Officer Cook beat Mr. Wise and slammed him down on the gurney, causing pain on Mr. Wise's wrists and back due to the improperly secured handcuffs. Indeed, he had to scream due to "excruciating pain" caused by the officer's slamming down action and begged for relief with tears. Officer Cook took no action to quell the pain,

but instead left Mr. Wise strapped on the gurney in pain for hours. The officer also did not permit him to be seen by medical staff despite the fact that he had just suffered a seizure and cried in pain.

Mr. Wise's allegations, considered as a whole, easily permit a plausible inference that Officer Cook acted with malicious and sadistic intent to purposefully cause harm, and all of the non-exclusive factors that this Court has considered in assessing the subjective component of an excessive force claim support the plausibility of such an inference. On the facts as alleged, Officer Cook simply had no need to beat and cause pain to Mr. Wise. The officer, however, inflicted force that was disproportionately high compared to any need of transporting an inmate who had suffered a seizure outside his cell. Mr. Wise also alleges that he was not resisting or combative. It thus can be inferred that Officer Cook had no perceived threat to quell using force at all. Nonetheless, the officer beat him and slammed him on the gurney to land forcefully on his handcuffed hands. Nor did Officer Cook make any effort to temper the severity of the force that he continued to apply as Mr. Wise pleaded for relief while being painfully strapped and padlocked on the gurney for about two hours. At the pleading stage, these factors amply support the plausibility of Mr. Wise's claim that Officer Cook had no legitimate purpose of applying force and acted out of ill will to harm Mr. Wise.

The district court reached a contrary conclusion by focusing only on allegations concerning Officer Cook's handcuffing. By ignoring other allegations, such as Officer Cook's beating of Mr. Wise and slamming down his body from midair onto his wrists that the officer did not properly handcuff, it failed to review the complaint in its entirety under the Rule 12(b)(6) standard. The district court also erred by substituting its own view of the merits by engaging in improper fact-finding at the motion to dismiss stage. It doubted Mr. Wise's claim in light of his accused drug use. Even if appropriately considered, this accusation is irrelevant because there was no need to beat and slam him down on the gurney, causing pain on his wrists and back, regardless of whether the medical incident had been due to a seizure or some other cause.

When viewing the whole complaint and drawing all reasonable inferences in Mr. Wise's favor, the allegations make plausible the inference that Officer Cook acted maliciously and sadistically to harm Mr. Wise. He thus sufficiently states an excessive force claim.

## STANDARD OF REVIEW

This Court reviews de novo a grant of a motion to dismiss for failure to state a claim. *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020). In doing so, the Court must take all factual allegations in a complaint as true and draw all reasonable inferences in favor of the plaintiff. *Id.* "A Rule 12(b)(6) motion to dismiss 'does not

resolve contests surrounding facts, the merits of a claim, or the applicability of defenses.'" *Id.* (quoting *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013)). As a general rule, a court may not consider extrinsic evidence when reviewing a motion to dismiss for failure to state a claim. *Harrell v. Freedom Mortg. Corp.*, 976 F.3d 434, 439 n.5 (4th Cir. 2020).

Pro se complaints like Mr. Wise's are "to be liberally construed" and "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

## ARGUMENT

**I.    The District Court Correctly Ruled That an Eighth Amendment Excessive Force Claim Is Cognizable Under *Bivens*.**

In *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), the Supreme Court recognized an implied cause of action for damages against federal officials who violate an individual's constitutional rights.[3] While *Bivens* involved a claim for an unlawful arrest, search, and use of unreasonable force in violation of the Fourth Amendment, 403 U.S. at 389, courts have over time recognized *Bivens* causes of action in other contexts, *see, e.g., Carlson v.*

---

[3] Mr. Wise first addresses the district court's correct conclusion that an excessive force claim is a cognizable *Bivens* claim because "the *Bivens* question" "is 'antecedent' to the other questions presented." *Hernandez v. Mesa*, 137 S. Ct. 2003, 2006 (2017) (quoting *Wood v. Moss*, 572 U.S. 744, 757 (2014)).

*Green*, 446 U.S. 14, 16 & n.1, 18–19 (1980) (Eighth Amendment claim based on prisoner mistreatment by prison officials); *Farmer v. Brennan*, 511 U.S. 825, 828–29, 832–34, 847–49 (1994) (Eighth Amendment claim based on serious harm inflicted on inmate).[4]

The Supreme Court in *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017), articulated a two-step inquiry for determining whether a constitutional violation gives rise to a cognizable *Bivens* claim. At the first step, courts "determin[e] whether a case presents a new *Bivens* context" by inquiring whether "the case is different in a meaningful way from previous *Bivens* cases" decided by the Supreme Court. *Id.* at 1859. *Abbasi* identified factors relevant to assessing the first step:

> A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

---

[4] This Court has noted that the Supreme Court in *Farmer* "acknowledged that the action was brought under *Bivens*, but did not question the propriety of the *Bivens* remedy in that case," while also noting that the Supreme Court in *Abbasi* "did not include *Farmer* in its list of accepted contexts for *Bivens* claims." *Earle v. Shreves*, 990 F.3d 774, 778 n.1 (4th Cir. 2021) (internal citation omitted). This Court in *Earle* did not need to address "*Farmer*'s precise status" after *Abbasi*. *Id.* The Third Circuit has done so, and held that *Farmer* "recognized a failure-to-protect claim under the Eighth Amendment" under *Bivens*, and concluded that *Abbasi* did not overrule *Farmer* by implication. *Bistrian v. Levi*, 912 F.3d 79, 90–91, 94 (3d Cir. 2018).

*Id.* at 1860. If there are no meaningful differences, the case presents a cognizable *Bivens* claim, and the inquiry ends. *See Hicks v. Ferreyra*, 965 F.3d 302, 309 (4th Cir. 2020).

If the case does present a new context, courts ask at the second step whether there are any "special factors counselling hesitation" before extending a *Bivens* remedy. *Abbasi*, 137 S. Ct. at 1857 (quoting *Carlson*, 446 U.S. at 18). Focusing on separation-of-powers principles, the inquiry concentrates on "whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id.* at 1857–58. Courts also assess whether there is an "alternative remedial structure present in a certain case." *Id.* at 1858. Since *Abbasi*, the Courts of Appeals have recognized *Bivens* claims in new contexts where special factors did not counsel hesitation before recognizing a remedy. *See, e.g.*, *Bistrian v. Levi*, 912 F.3d 79, 91–92, 94 (3d Cir. 2018) (holding that an Eighth Amendment failure-to-protect claim fell within an existing context, and even if it did not, extending *Bivens* was proper); *Lanuza v. Love*, 899 F.3d 1019, 1033–34 (9th Cir. 2018) (recognizing extension of *Bivens* to a Fifth Amendment due process claim against an immigration officer).

Here, the district court correctly held that Mr. Wise's case presented an Eighth Amendment excessive force claim that is cognizable under *Bivens*. J.A. 262.

## A. An Excessive Force Claim Does Not Present a New Context.

Mr. Wise claims that Officer Cook violated the Eighth Amendment by exerting excessive force when he suffered a seizure in September 2019. Far from breaking any new ground, this case does not differ meaningfully from the contexts presented in *Bivens* and its progeny. Excessive force claims protect individuals from unlawful force similar to that in *Bivens*—which included a claim of excessive force under the Fourth Amendment, 403 U.S. at 389—and arise from the same constitutional guarantee to be free from "unnecessary and wanton infliction of pain" as in deliberate indifference claims under the Eighth Amendment, similar to that in *Carlson* and *Farmer*, *see, e.g.*, *Farmer*, 511 U.S. at 832 (explaining that the prohibition of "cruel and unusual punishments" is the common source of excessive force and deliberate indifference claims). The Supreme Court has established clear legal standards for excessive force claims and deliberate indifference claims, with both requiring a showing of subjective intent. *See Whitley v. Albers*, 475 U.S. 312, 320–21 (1986). Excessive force claims based on an officer's purposeful infliction of harm do not "differ meaningfully" from prison condition claims against risks of serious harm to inmates, the latter of which courts have long permitted as *Bivens* claims, *see, e.g.*, *Carlson*, 446 U.S. at 18–23; *Farmer*, 511 U.S. at 834, 840–49. Mr. Wise's case does not present a new *Bivens* context.

Indeed, all of the factors identified in *Abbasi* illustrate that Mr. Wise's excessive force claim is not meaningfully different from the context of recognized *Bivens* claims.

Like *Bivens* and *Carlson*, Mr. Wise's case involves a claim against a rank-and-file officer (Officer Cook) as opposed to high-ranking officials. And, as mentioned, the Eighth Amendment guarantee to be free from excessive force is identical or similar to constitutional rights that have been recognized to give rise to implied causes of action in *Carlson*, 446 U.S. at 16 & n.1 (Eighth Amendment right of an inmate to be free from physical harm resulting from the prison officials' "acts and omissions") and *Bivens*, 403 U.S. at 389 (Fourth Amendment right to be free from officers' "unreasonable force"), as opposed to other rights such as the First Amendment. Indeed, this case involves the exact type of conduct at issue in *Bivens* (excessive force), under the exact provision of the Constitution at issue in *Carlson* (the Eighth Amendment's Cruel and Unusual Punishments Clause).

The generality or specificity of the official action here is also identical to those in recognized *Bivens* claims directed to concrete acts of individual officers. Mr. Wise challenges specific acts of beating and forceful application of restraints to cause excruciating pain by an individual line-level officer, Officer Cook, rather than any general policy, as in *Bivens* and *Carlson*. *Cf. Tun-Cos v. Perrotte*, 922 F.3d 514, 524–25 (4th Cir. 2019) (concluding that a challenge to the executive branch's overall

immigration enforcement policy supported conclusion that the claim presented a new context). And, like those cases, the extent of judicial guidance is ample, as courts have established standards for determining whether an officer inflicts "unnecessary and wanton pain" under the Eighth Amendment. *See, e.g.*, *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992) (explaining when prison officials may be accused of "using excessive physical force in violation of the Cruel and Unusual Punishments Clause"); *Whitley*, 475 U.S. at 319. Indeed, in *Wilkins v. Gaddy*, the Supreme Court provided even more guidance on the factors relevant to stating an Eighth Amendment claim for excessive force. 559 U.S. 34 (2010) (per curiam) (abrogating *Norman v. Taylor*, 25 F.3d 1259 (4th Cir. 1994) (en banc)).

The legal mandate under which Officer Cook was operating was also the same as the defendants in *Carlson*, because all were Bureau of Prisons ("BOP") officers acting under BOP regulations. Moreover, Mr. Wise's claim does not present a risk of disruptive intrusion by the judiciary because he challenges Officer Cook's specific conduct rather than seeking to change general BOP policies formulated by high-level executive officers. Indeed, Mr. Wise does the opposite of seeking to change BOP policies—he challenges actions by Officer Cook that *violate* BOP policy.[5]

---

[5] To the extent that Officer Cook would argue he was justified in applying physical force to discipline Mr. Wise for alleged drug use, the officer's conduct would be inconsistent with BOP regulations. The discipline process requires an investigation before imposing sanctions, *see* 28 C.F.R. § 541.5, and sanctions for prohibited acts

Finally, no special factors are present that make Mr. Wise's case meaningfully different from previous *Bivens* cases. Officer Cook pointed to no such factors before the district court. *See* Defs.' Br. 17–18.

Unsurprisingly in light of these factors, courts have consistently recognized *Bivens* claims for excessive force under the Eighth Amendment over the years. In fact, this Court has had several occasions to acknowledge that such claims could be brought under *Bivens*.

In *Hill v. Crum*, 727 F.3d 312 (4th Cir. 2013), an inmate asserted such a claim against a correctional officer. *Id.* at 315. The district court held that the inmate failed to state an excessive force claim because he had not alleged *de minimis* injury under the then-controlling precedent of *Norman v. Taylor*, 25 F.3d 1259 (4th Cir. 1994) (en banc), which had approved the practice of using injury as a proxy to the strength of force. During the pendency of the appeal, the Supreme Court in *Wilkins v. Gaddy*, 559 U.S. 34 (2010) (per curiam) rejected the approach in *Norman*. *Id.* at 38–39. In light of *Wilkins*, this Court thus vacated the district court's judgment on that claim. *Hill*, 727 F.3d at 316 (citing *Hill v. O'Brien*, 387 F. App'x 396 (4th Cir. 2010) (vacating dismissal because the mere fact that the injury is *de minimis* does not preclude

---

do not include impromptu beating and causing physical pain to an inmate, *see* 28 C.F.R. § 541.3.

an inmate from asserting a *Bivens* excessive force claim)). While *Hill* was not presented with the issue of whether an excessive force claim is cognizable under *Bivens*, the Court had acknowledged the availability of a *Bivens* remedy by instructing the district court to consider the sufficiency of the inmate's allegations in light of *Wilkins*. *See id.*; *O'Brien*, 387 F. App'x at 399. *See also Williams v. Calton*, 551 F. App'x 50, 51 (4th Cir. 2013) (similar).

Other Courts of Appeals have also acknowledged excessive force claims under *Bivens*, both before and after *Abbasi*; many of these decisions are unpublished, reflecting the unexceptional nature of recognizing such claims. *See, e.g.*, *Reid v. United States*, 825 F. App'x 442, 444–45 (9th Cir. 2020) (holding that the plaintiff's "Eighth Amendment claims[, including excessive force claims] d[id] not present a new *Bivens* context"); *Santiago v. Fields*, 490 F. App'x 479, 480–81 (3d Cir. 2012) (affirming a jury verdict against the plaintiff on his Eighth Amendment excessive force claim under *Bivens*); *Dunlap v. Fields*, 221 F.3d 1334 (6th Cir. 2000) (unpublished) (similar); *Green v. Corr. Corp. of Am.*, 401 F. App'x 371, 375–76 (10th Cir. 2010) (assuming that an excessive force claim was a cognizable *Bivens* claim but affirming dismissal for failing to adequately plead the use of excessive force); *Clifton v. Miller*, 139 F.3d 901 (7th Cir. 1998) (unpublished) (recognizing a *Bivens* claim for excessive force under the Eighth Amendment but holding that the judgment for the plaintiff was barred by his award under the Federal Tort Claims Act due

to double recovery). Excessive force claims are "run-of-the-mill challenges to 'standard law enforcement operations' that fall well within *Bivens* itself." *Jacobs v. Alam*, 915 F.3d 1028, 1038 (6th Cir. 2019).

**B.  Even If This Case Presents a Modest Extension of *Bivens*, No Special Factors Counsel Hesitation Before Recognizing a Remedy for a Prison Officer Wantonly Beating and Inflicting Excruciating Pain On A Prisoner.**

Because Mr. Wise's claim does not present a new *Bivens* context, there is no need to address the second step of the *Abbasi* framework. *See Hicks*, 965 F.3d at 309. But even if Mr. Wise's claim did present a new *Bivens* context, no special factors counsel hesitation before extending a *Bivens* remedy for an unnecessary and wanton infliction of pain caused by the excessive force alleged here.

The special factors inquiry focuses on "whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Abbasi*, 137 S. Ct. at 1857–58. No such factors counsel hesitation here.

First, it has been well established that the judiciary is well-suited to entertain damages claims for excessive force caused by specific acts of individual officers. Indeed, courts have often reviewed those claims in the context of both *Bivens* claims against federal officers, *see supra* page 22–23, and § 1983 claims against state officers, *see, e.g.*, *Wilkins*, 559 U.S. at 34–35 (reversing judgment against a prisoner's

excessive force claim); *Hudson*, 503 U.S. at 6–7; *Thompson v. Virginia*, 878 F.3d 89, 93, 101–02 (4th Cir. 2017).

The Supreme Court has also approved the judiciary's adjudication of damages claims in the prison context. *See, e.g.*, *Carlson*, 44 U.S. at 20–21 ("[T]he *Bivens* remedy, in addition to compensating victims, serves a deterrent purpose."). And Courts of Appeals have recognized that courts can decide *Bivens* claims similar to Mr. Wise's claim. For example, in *Bistrian v. Levi*, 912 F.3d 79 (3d Cir. 2018), the Third Circuit held that an inmate's claim for failure to protect against violence was a cognizable *Bivens* claim. *Id.* at 90–92 (holding that the Eighth Amendment claim did not present a new context, and even if it did, extension of Bivens was appropriate). If a claim that a prison officer failed to protect an inmate from physical harm by other prisoners is well suited for the judiciary and does not counsel hesitation, it must be the case that a *Bivens* remedy is appropriate when an officer *directly* and *maliciously* harms the inmate through excessive force.

Second, Mr. Wise's case does not raise any separation-of-powers concerns regarding legislation or executive policy. He seeks to hold an individual officer liable for a specific instance of excessive force, which is the type of situation where the Supreme Court has recognized an implied cause of action. *See Bivens*, 403 U.S. at 396–97 (no special factors counseled hesitation where the case did not deal with a question of "federal fiscal policy" or with liability on congressional action).

Before the district court, Defendants argued that Congress's enactment of the Prison Litigation Reform Act ("PLRA") counsels hesitation before extending *Bivens* to prison cases. Defs.' Br. 22–23. Contrary to their assertion, the PLRA confirms that *Bivens* claims are appropriate for prison cases. In particular, the text of the PLRA makes clear that it addresses *procedural* limits rather than substantive limits on *Bivens* claims. *See, e.g.*, 42 U.S.C. § 1997e(a) (1996) (requiring "a prisoner confined in any jail, prison, or other correctional facility" to exhaust available administrative remedies before bringing an action under § 1983 or "other Federal law"). The PLRA was enacted in 1996 when *Bivens* remedies were generally recognized. The Supreme Court had made the availability of *Bivens* claims clear in *Carlson* in 1980 and reaffirmed the availability in *Farmer* in 1994, just two years before the PLRA was enacted. The text of the PLRA does not substantively limit *Bivens* claims (which were a well-recognized part of "Federal law" in 1996) but rather regulates the procedure for filing them. Congress is presumed to be "aware of existing law when it passes legislation," *Miles v. Apex Marine Corp.*, 498 U.S. 19, 32 (1990), and the text of the PLRA together with the relevant legal context underscores that the statute cannot be read as limiting the availability of a *Bivens* remedy.

The Supreme Court's decision in *Porter v. Nussle*, 534 U.S. 516 (2002) confirms what the text of the PLRA makes clear. Before the PLRA was enacted, the

Supreme Court had held in *McCarthy v. Madigan*, 503 U.S. 140 (1992), that a prisoner did not need to exhaust BOP administrative procedures before bringing a *Bivens* claim. Congress legislated in response to this opinion, and could have decided that BOP procedures should displace a *Bivens* remedy; instead it decided to only extend the exhaustion requirement to suits "under section 1983 . . . , or any *other Federal law*," *see* 42 U.S.C. § 1997e (1996) (emphasis added). The Supreme Court has interpreted § 1997e (which was amended by the PLRA) to require that "federal prisoners suing under *Bivens* . . . must first exhaust inmate grievance procedures." *Porter*, 534 U.S. at 524. The Supreme Court's holding that a prisoner must follow the *procedures* of the PLRA to file a *Bivens* claim would make no sense if in fact the PLRA *substantively barred* the filing of a *Bivens* claim.

Indeed, the Third Circuit concluded, "[t]he very statute that regulates how *Bivens* actions are brought cannot rightly be seen as dictating that a *Bivens* cause of action should not exist at all." *Bistrian*, 912 F.3d at 93; *id.* at 93 n.22 ("It is equally, if not more, likely . . . that Congress simply wanted to reduce the volume of prisoner suits by imposing exhaustion requirements, rather to eliminate whole categories of claims through silence and implication."). The Third Circuit also rejected "the argument that Congressional silence within the PLRA suggests that Congress did not want a damages remedy against prison officials for constitutional violations" because it "would arguably foreclose all *Bivens* claims brought in the prison context,

which would run counter to the Supreme Court's ruling in *Carlson*." *Mack v. Yost*, 968 F.3d 311, 324 (3d Cir. 2020). This Court should not reach a contrary conclusion.

Though resort to legislative history is unnecessary, it likewise confirms that Congress intended the PLRA to address *procedural requirements* for bringing *Bivens* claims. During debate when the bill was passed, Congress considered the Associate Attorney General's testimony that "[t]he constitutional provision enforced most frequently in prison cases is the Eighth Amendment's prohibition on cruel and unusual punishment," and that violations have been found for "excessive violence, whether inflicted by guards or by inmates." 42 Cong. Rec. S2285, S2298 (Mar. 19, 1996). The Associate Attorney General further testified that Congress "must also take care to ensure that any measures adopted do not deprive prisoners of effective remedies for real constitutional wrongs." *Id*. at S2299. There was no discussion of barring new *Bivens* claims. Rather, Congress focused on the procedures governing those claims as opposed to the availability of relief. *See, e.g.*, 141 Cong. Rec. H14078, H14105 (Dec. 6, 1995) (statement of Rep. LoBiondo) (arguing that the "real problem" with the Supreme Court's opinion in *McCarthy* was that "an inmate need not exhaust the administrative remedies available prior to proceeding with a *Bivens* action for money damages only").

Third, Mr. Wise's case does not impose high administrative burden on the government because his claim is directed to a rank-and-file officer's specific action

and could not possibly impact operations on a system-wide level. If Defendants repeat their argument that this case would result in costs of frivolous lawsuits against BOP staff, that contention would lack merit. Congress already created tools to screen out frivolous suits under the PLRA. *See* 28 U.S.C. § 1915A(a) (requiring courts to *sua sponte* screen and dismiss complaints that are "frivolous, malicious, or fails to state a claim upon which relief may be granted"). The defendants in prisoner cases would also be protected by the qualified immunity defense. While all litigation entails some burden, these tools limit the costs. *See Abbasi*, 137 S. Ct. at 1866 (the "qualified immunity rule" balances "two competing interests" in damages suits and social costs). Fear of frivolous lawsuits by itself does not prevent courts from recognizing *Bivens* claims in the prison context. *See Bistrian*, 912 F.3d at 93 (holding that the burden on the government "alone cannot be a complete barrier to *Bivens* liability" as it "would be true of practically all claims arising in a prison").

Moreover, unlike *Abbasi* and *Hernandez*, this case does not require the judiciary to alter government operations or interfere with national security and foreign relation policies. *Abbasi*, 137 S. Ct. at 1861; *Hernandez v. Mesa*, 140 S. Ct. 735, 744–46 (2020); *cf. Tun-Cos*, 922 F.3d 5 at 527 (that the plaintiffs "specifically targeted the Trump Administration's immigration enforcement policy" counseled hesitation). Officer Cook did not identify any prison policy requiring the excessive

force that he applied to Mr. Wise or contend that this case would detrimentally interfere with such policy. As discussed above, in fact, Officer Cook's conduct was inconsistent with BOP regulations, at least 28 C.F.R. §§ 541.3 and 541.5. *See supra* page 21 n.5.

Mr. Wise has no adequate, alternative remedy to the beating and excruciating pain that he suffered from Officer Cook's excessive force. Any administrative remedy available would not redress the suffered harm and pain, "which due to their very nature are difficult to address except by way of damages actions after the fact." *Abbasi*, 137 S. Ct. at 1862. Like *Bivens* and *Carlson*, this is a case in which "it is damages or nothing." *Id.* (quoting *Bivens*, 403 U.S. at 140 (Harlan, J., concurring in judgment)). As the Supreme Court stated, "a [*Bivens*] damages remedy might be necessary to redress past harm and deter future violations" when other remedies "prove insufficient." *Id.* at 1858.

Although Defendants suggested that the BOP's administrative remedy program is an alternative remedy, Defs.' Br. 19–20, it is not an adequate alternative capable of precluding a *Bivens* remedy. First, Congress recognized that an inmate could bring a *Bivens* claim *after* following BOP procedures under 42 U.S.C. § 1997e. As mentioned, the Supreme Court has held that this statute requires that "federal prisoners suing under *Bivens* . . . must first exhaust inmate grievance procedures." *Porter*, 534 U.S. at 524. Second, the grievance process cannot redress past

physical injuries due to lack of monetary relief. *Bistrian*, 912 F.3d at 92 ("The administrative grievance process is not an alternative because it does not redress [the plaintiff's] harm, which could only be remedied by money damages.").

Defendants argued below that the absence of monetary relief through the BOP's process is not relevant in light of *Tun-Cos*, 922 F.3d at 527. *See* Defs.' Br. 19–20. That case, however, involved a wholly different remedial scheme under the Immigration and Nationality Act ("INA"), and concerned alleged wrongful conduct by immigration agents. *Tun-Cos*, 922 F.3d at 518. The Court held that Congress's actions related to the INA indicated that it did not want money damages to be available in immigration matters. *Id.* at 527. In contrast, Mr. Wise's case involves a claim for prisoner mistreatment in which Congress chose not to foreclose *Bivens* damages remedies. *See supra* page 26–28.

For all of these reasons, the district court correctly concluded that Mr. Wise's case for an Eighth Amendment violation by excessive force presents a cognizable *Bivens* claim.

## II. Mr. Wise's Complaint Sufficiently Pleads That Officer Cook Applied Excessive Force in Violation of the Eighth Amendment.

The Eighth Amendment forbids "unnecessary and wanton infliction of pain." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312 (1986)). It thus prohibits prison officials from "us[ing] excessive physical force against prisoners." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citing *Hudson*,

503 U.S. 1). An excessive force claim inquires whether the alleged wrongdoing was objectively "harmful enough" and whether "the officials [subjectively] act[ed] with a sufficiently culpable state of mind." *Hudson*, 503 U.S. at 8.

### A. Mr. Wise's Allegations Establish That Officer Cook's Conduct Was Objectively "Harmful Enough."

"An injury is sufficiently serious for purposes of the objective component of an Eighth Amendment excessive force claim as long as it rises above the level of de minim[i]s harm." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008); *Thompson v. Virginia*, 878 F.3d 89, 100–01 (4th Cir. 2017). Showing de minimis force is "not a high bar." *Brooks v. Johnson*, 924 F.3d 104, 112 (4th Cir. 2019) (quoting *Hudson*, 503 U.S. at 10). The Supreme Court has "reject[ed] the argument that 'minor' injuries are not actionable." *Iko*, 535 F.3d at 238 (quoting *Hudson*, 503 U.S. at 9–10).

Mr. Wise adequately pleads that Officer Cook's force was "harmful enough" and well beyond "de minimis." *Hudson*, 503 U.S. at 8, 10. He alleges that, upon responding to Mr. Wise's seizure in September 2019, Officer Cook "attacked [Mr. Wise] physically" and "***beat***[]" him. J.A. 58 (emphasis added). Officer Cook then tightly handcuffed Mr. Wise behind the back, and with other officers flipped him in midair and slammed him down on a gurney. J.A. 36, 58. These actions caused Mr. Wise's body weight to ratchet the handcuffs on his wrists (because they were not double locked as required by prison procedures). *Id.* The slamming down motion also caused the handcuffs to "dig[] into [his] lower back painfully," "brutally cutting

skin and bruising to the bones" of his wrists and back. J.A. 36, 58. Mr. Wise screamed because of the "immediate and excruciating pain." J.A. 58–59. Officer Cook and the other officers further strapped and padlocked Mr. Wise in a position that continued to apply pain on his wrists and back for about two hours despite his begging for relief, including his plea that his "hands [we]re hurting so bad." J.A. 59; J.A. 36. Through his seizure, his beating, and his two hours being padlocked, Officer Cook never summoned a medical staff member to examine him. J.A. 59.

The painful actions that Mr. Wise alleges Officer Cook took against him far exceed *de minimus* force and was harmful enough under the objective standard. *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010) (per curiam) (reversing district court's dismissal of an excessive force claim where the plaintiff alleged that he was "punched, kicked, kneed, choked, and body slammed 'maliciously and sadistically' and '[w]ithout any provocation'" (alteration in original)); *Hudson*, 503 U.S. at 8, 10; *Iko*, 535 F.3d at 238–39.

### B. Mr. Wise's Allegations Support a Reasonable Inference That Officer Cook Acted "Maliciously and Sadistically" to Harm Him.

A plaintiff may plead the subjective component by sufficiently alleging that an officer "applied force 'maliciously and sadistically for the very purpose of causing harm.'" *Farmer*, 511 U.S. at 836 (quoting *Hudson*, 503 U.S. at 5). In assessing whether the officer acted "maliciously and sadistically," courts have considered non-

exclusive factors, including: (1) "the need for the application of force"; (2) "the relationship between the need and the amount of force that was used"; (3) "the extent of any reasonably perceived threat that the application of force was intended to quell"; and (4) "any efforts made to temper the severity of a forceful response." *Iko*, 535 F.3d at 239 (quoting *Whitley*, 475 U.S. at 321). Those factors permit inferences on the officer's malicious intent behind the force. *Brooks*, 924 F.3d at 116.

Mr. Wise alleges that Officer Cook responded to an emergency distress call and was told by an inmate that he was "[h]aving a seizure." J.A. 35–36, 58. The officer beat Mr. Wise, and handcuffed his wrists and shackled his legs, and took him out of the cell face down. J.A. 36, 58. On the facts as alleged in the operative complaint, there was no reason for this beating. And when Mr. Wise pleaded "I had a seizure, I'm not resisting, why are you doing this to me?," Officer Cook flipped him in midair and slammed his body on a gurney. J.A. 58. The slamming down action caused extreme pain "brutally cutting skin and bruising to the bones" on Mr. Wise's wrists and back due to his body weight ratcheting on the handcuffs that the Officer Cook failed to secure according to standard procedure. J.A. 58; J.A. 36. Even during this time, Mr. Wise alleges that he was "at no time . . . resisting" or "combative," *id.*, so there could plainly be no justification for the officer to slam Mr. Wise. *See, e.g.*, *Thompson*, 878 F.3d at 104 (explaining that punching and using mace on a non-resisting inmate violates the right to be free from excessive force).

Officer Cook's infliction of suffering on Mr. Wise did not end there. The officer tightly strapped Mr. Wise on the gurney to prevent him from relieving the painful pressure on his wrists and back. J.A. 59. Despite his pleas to "please loosen the cuffs[,] my hands are hurting so bad," the officer left him in that painful position for hours and did not let him be seen by medical staff despite knowing his seizure history. *Id.* All of these allegations "give rise to an inference that force was used for malicious or punitive purposes." *Brooks*, 924 F.3d at 114.

Mr. Wise's case is similar to that in *Wilkins v. Gaddy*, 559 U.S. 34 (2010). Like the plaintiff in *Wilkins* who alleged that he was "punched, kicked, kneed, choked, and body slammed 'maliciously and sadistically' and '[w]ithout any provocation,'" *id.* at 38 (alteration in original), Mr. Wise was also beaten and body slammed for no justification. The force of such actions is "nontrivial," and the lack of any provocation by Mr. Wise supports the inference that the force "was applied . . . maliciously and sadistically to cause harm," as there was no legitimate reason for inflicting pain. *Id.* at 39 (alteration in original) (quoting *Hudson*, 503 U.S. at 7). *See also Hope v. Pelzer*, 536 U.S. 730, 734–35, 738 (2002) (holding that the prison guards inflicted "wanton and unnecessary" pain where the plaintiff was handcuffed to a hitching post in a way that caused needless pain long since any safety concerns had abated, restricted in that position for an unnecessary 7-hour period, subject to taunting, and deprived of bathroom breaks).

All of the non-exclusive factors that this Court has considered in assessing the subjective component further confirm that the allegations support a reasonable inference that Officer Cook acted "maliciously and sadistically" when applying force to Mr. Wise. *Iko*, 535 F.3d at 239; *Brooks*, 924 F.3d at 116.

**Need for the Application of Force**: Mr. Wise alleges facts giving rise to the inference that Officer Cook's force outweighed "the need for the application of force." *Iko*, 535 F.3d at 239. First of all, Mr. Wise alleges that he was having a seizure and showed no resistance to Officer Cook. J.A. 35–36, 58. Because he was at no time resisting or combative (J.A. 36, 58), "Officer [Cook] never needed to use force on Mr. [Wise] during the transport" out of his cell, *Thompson*, 878 F.3d at 99, let alone beat him (J.A. 58). Mr. Wise also alleges that, while it was standard procedure to double lock the handcuffs to prevent ratcheting on the skin, Officer Cook handcuffed him without doing so and then slammed him on an gurney, which would have obviously caused the handcuffs to inflict pain on his wrists and back. J.A. 36, 58. Again, Mr. Wise was neither resisting nor combative, *id.*, and Officer Cook had no legitimate reason to slam him and cause excruciating pain during the process of putting him on the gurney. Mr. Wise "did not disobey any instruction." *Thompson*, 878 F.3d at 99. Rather he made clear that he was complying, saying "I'm not resisting, why are you doing this to me?" J.A. 58. Officer Cook had no reason to slam Mr. Wise when he said he was not resisting, as it is "well-established . . . that officers

may not 'use gratuitous force against a prisoner who has already been subdued.'" *Thompson*, 878 F.3d at 104 (alteration in original) (quoting *Cowart v. Erwin*, 837 F.3d 444, 454 (5th Cir. 2016)). *See also Dean v. Jones*, 984 F.3d 295, 304–05 (4th Cir. 2021) (use of pepper spray on an inmate who was not resisting permitted an inference that the force was not necessary but was "to retaliate or punish").

**Relationship between the Need and the Amount of Force Used**: Similar to the first factor, the allegations permit the inference that Officer Cook's use of force was unnecessary and unreasonable when considering "the relationship between the need and the amount of force that was used." *Iko*, 535 F.3d at 239. Officer Cook inflicted force that was disproportionately high compared to any need of safely transporting Mr. Wise (who was not combative) out of the cell. *See id.* at 238–39 (applying force even after the inmate attempted to comply with officer orders "tend[ed] to show that the amount of force was disproportionate to the need for force"). Moreover, Officer Cook left Mr. Wise strapped and padlocked on the gurney in the painful position for over two hours without being seen by medical staff. J.A. 59; J.A. 36. The continuing force inflicted on Mr. Wise was excessive compared to any need to transport him. *See Thompson*, 878 F.3d at 100 ("the use of force was disproportionate from start to finish" because "there was never a need"). Even assuming there was a need to transport him (if any), Officer Cook's use of force was disproportionate to any such a need.

**Extent of Any Reasonably Perceived Threat That the Force Was Intended to Quell**: The allegations further support the reasonable inference that Officer Cook had no "reasonably perceived threat" and that the officer therefore had no threat to quell. *Iko*, 535 F.3d at 239. Mr. Wise alleges that Officer Cook knew that Mr. Wise was suffering a seizure in September 2019, because the officer knew of his seizure history (due to the bunk bed restriction) and also was specifically told by an inmate that Mr. Wise was "[h]aving a seizure." J.A. 35–36, 58; *see also* J.A. 31, 57 (copy of bottom bunk restriction noting seizure history available to on-duty correctional officer). Thus, when Officer Cook responded to the distress call, the officer was not facing a prison disturbance that needed force to restore order as in *Whitley*, 475 U.S. at 320, but rather faced a medical incident of which he was aware. Moreover, Mr. Wise "at no time was resisting or capable of resistance," J.A. 36, and was not combative, J.A. 58. There is simply no legitimate reason to beat a prisoner who needs medical attention and is not combative. And although Mr. Wise did not resist the handcuffing and being put on the gurney, and did not resist Officer Cook, the officer nevertheless applied the unnecessary force. This factor further supports an improper intent. *See Brooks*, 924 F.3d at 116 (tasering when there was no immediate safety risk supported inferences of the officers' ill motive).

**Any Efforts Made to Temper the Severity of a Forceful Response**: Mr. Wise's allegations also permit the reasonable inference that Officer Cook acted

maliciously given the officer's non-existent efforts "to temper the severity of a force-ful response." *Iko*, 535 F.3d at 239. Contrary to tempering his forceful response, Officer Cook continued to maintain the painful pressure he had applied when slam-ming and strapping Mr. Wise on the gurney long past any point than was necessary (even assuming, contrary to the complaint's allegations, that the officer had some justification when he first restrained Mr. Wise). Mr. Wise had screamed in "excru-ciating pain" and begged for relief when he was tightly strapped on the gurney. J.A. 58–59. His plea that "I had a seizure, why are you doing this to me, please loosen the cuffs[,] my hands are hurting so bad" was ignored. J.A. 59. Nevertheless, Officer Cook took no action to temper the pain and left Mr. Wise strapped on the gurney with the tightened handcuffs pressing on his wrists and back for hours. J.A. 36, 59. *See Iko*, 535 F.3d at 240 (fourth factor favored the plaintiffs because the officer failed to alleviate effects of the pepper spray and provide medical treatment).

**Other Considerations**: Other allegations further show Officer Cook's ill will toward Mr. Wise. Upon responding to the medical emergency, Officer Cook said "B.S. he's on drugs" despite being apprised by another inmate that Mr. Wise was "[h]aving a seizure." J.A. 35–36, 58. Mr. Wise was further "mocked" and "laughed at" when he was strapped on the gurney for two hours and begged for relief. J.A. 59. Officer Cook did not have Mr. Wise seen by anyone from the medical staff for his seizure or pain. *Id.*

The above factors, taken in their totality, more than support a reasonable inference that Officer Cook maliciously and sadistically inflicted pain by deploying excessive force on Mr. Wise who had suffered a seizure. Mr. Wise's allegations "give . . . [Officer Cook] fair notice of what the . . . claim is and the grounds upon which it rests," and thus his complaint is sufficient to survive a motion to dismiss. *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

**C.    The District Court Erred By Failing to Consider the Whole Complaint And Engaging in Improper Fact-Finding at the Pleading Stage.**

When reviewing a Rule 12(b)(6) motion to dismiss, courts must "consider the complaint in its entirety." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007). This review must "not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (quoting *Tobey*, 706 F.3d at 387). Had the district court followed these requirements, the above analysis of how Mr. Wise states a plausible excessive force claim would have been straightforward. Instead the district court did not comply with either requirement, leading to the erroneous dismissal.

**1.    The District Court Improperly Considered Only the Handcuffing Allegation in the Second Amended Complaint.**

In dismissing the excessive force claim, the district court focused only on the allegations concerning Officer Cook's handcuffing of Mr. Wise. In particular, the

district court stated that (1) it could not "find that the application of handcuffs on an inmate, when it [wa]s unclear whether he was experiencing side effects from drug use or a seizure, to be unreasonable"; (2) "[i]t is reasonable that the application of handcuffs [wa]s necessary and appropriate under these circumstances when moving an inmate from one area of a prison to another"; (3) "there is no indication that Defendant Cook intentionally applied the handcuffs too tightly"; and (4) "[g]iven the circumstance of the situation that required immediate medical attention, it is not unreasonable that Defendant Cook might not take the time or effort to double lock handcuffs." J.A. 275. The entirety of the district court's reasoning thus focused on whether applying handcuffs was reasonable.

But Mr. Wise's Second Amended Complaint contains significantly more factual allegations regarding Officer Cook's excessive force than mere handcuffing. The district court failed to consider the allegations that Officer Cook beat Mr. Wise and flipped him in midair and slammed him on a gurney in a way that caused "immediate and excruciating pain" (J.A. 58–59; J.A.36). It also did not consider that Mr. Wise was "at no time resisting" or "combative" and that Officer Cook left him painfully strapped and padlocked on the gurney for several hours despite pleas for relief (J.A. 36, 58–59). As discussed in Section II.B, Mr. Wise's complaint, "when viewed in its entirety, contains sufficient allegations giving rise to a strong inference of scienter," *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 609 (4th Cir.

2015), that Officer Cook acted "maliciously and sadistically" to harm him, *Farmer*, 511 U.S. at 836 (quoting *Hudson*, 503 U.S. at 5).

The district court thus erred by "ignor[ing] certain factual allegations in [Mr. Wise's] complaint" that support his claim. *Ray*, 948 F.3d at 228. It did not conduct the proper inquiry: "whether *all* of the facts alleged, taken *collectively*, give rise to a strong inference of scienter." *Tellabs*, 551 U.S. 308 at 323 (emphasis added). Its decision should be reversed on this ground alone.

### 2. The District Court Engaged in Improper Fact-Finding After Considering Extrinsic Evidence at the Pleading Stage.

The other fundamental error in the district court's dismissal is its fact-finding that Officer Cook acted reasonably during the September 2019 seizure incident. *See, e.g.*, J.A. 275 ("[T]he undersigned *cannot find that* the application of handcuffs on an inmate, when it [wa]s unclear whether he was experiencing side effects from drug use or a seizure, to be unreasonable." (emphasis added)); *id.* ("Given the circumstance of the situation that required immediate medical attention, *it is not unreasonable* that Defendant Cook might not take the time or effort to double lock handcuffs." (emphasis added)).

The district court, however, was not permitted to engage in fact-finding because a review under Rule 12(b)(6) must not resolve "contests surrounding facts" and "the merits of [the] claim." *Tobey*, 706 F.3d at 387. The district court could not

have made its own judgment on the merits at the pleading stage. *See id.* at 389 (rejecting argument that the claim was insufficiently pleaded because "[t]he question of reasonableness is a fact-intensive inquiry, going directly to the heart of the case.").

Moreover, the district court's analysis to support its fact-finding is replete with incorrect reasoning. It began its analysis by stating that the extrinsic record purportedly "reveals that prison staff had evidence indicating that [Mr. Wise] was a known drug user within the prison." J.A. 275 (citing J.A. 118–22 (Ex. 2 at 2–6 of Defs.' Br.)). The district court then found that Officer Cook acted reasonably because it was unclear whether Mr. Wise was exhibiting seizure symptoms or side effects of drug use and because "the situation required immediate medical attention." J.A. 275. In reaching this conclusion, the district court erred in multiple respects.

First, it misapplied the Rule 12(b)(6) standard by considering extrinsic evidence that was neither integral to nor explicitly relied on in the complaint. *See Harrell v. Freedom Mortg. Corp.*, 976 F.3d 434, 439 n.5 (4th Cir. 2020).

Second, even assuming it were proper to consider extrinsic evidence and that some evidence suggested drug use, the district court disregarded allegations that are sufficient to allow an inference that Officer Cook knew that Mr. Wise suffered a seizure. For example, Mr. Wise had a history of seizure, which Officer Cook knew, *see* J.A. 31, 35–36, 57–58, and another inmate specifically told the officer that he was "[h]aving a seizure," J.A. 35–36, 58. Moreover, the district court's speculation

of drug use was incorrect. Mr. Wise alleges that he "tested negative for drugs," no drugs were found in his cell, and Officer Cook's incident report was expunged.[6] J.A. 60. The district court improperly disregarded factual allegations favorable to Mr. Wise and erred by "draw[ing] reasonable inferences *against* [Mr. Wise] on a motion to dismiss," *Ray*, 948 F.3d at 228, improperly resolving a factual dispute against Mr. Wise, *Tobey*, 706 F.3d at 389.

Third, in any case, whether Mr. Wise actually used drugs in September 2019 is irrelevant and cannot justify dismissal. Mr. Wise alleges that he suffered a medical incident and he was not violent or combative at any time. J.A. 36, 58. Based on the facts as alleged—or, even if extrinsic evidence were considered, viewing the entire record in the light most favorable to Mr. Wise—there was no need to apply excessive force by beating Mr. Wise, flipping him in the air and slamming down on a gurney, and by causing him pain on his wrists and back, while he had just suffered a medical incident and was not combative, regardless of whether the incident had been caused by a seizure or drug use. *See Dean v. Jones*, 984 F.3d 295, 304–05 (4th Cir. 2021)

---

[6] The district court also improperly speculated that seizure symptoms are similar to side effects of drugs. There were no allegations or even extrinsic evidence to support that speculation. To the extent that the court was taking judicial notice, it was improper. *See Nolte v. Cap. One Fin. Corp.*, 390 F.3d 311, 317 n.* (4th Cir. 2004) ("Only indisputable facts are susceptible to judicial notice."). In any case, the court's conjecture had no basis because it did not even compare the *specific* symptoms that Mr. Wise exhibited during the September 2019 incident with the side effects of drug use.

(explaining that pepper spraying a non-resisting inmate gives rise to an inference of an impermissible motive).

Fourth, although the district court found that Officer Cook reasonably did not double lock the handcuffs in an emergency situation, J.A. 275, Mr. Wise's allegations permit inferences that reach an opposite conclusion. Double locking was standard procedure, and Mr. Wise was neither resisting nor combative. J.A. 36, 58. Mr. Wise's plea to Officer Cook that "I had a seizure, I'm not resisting, why are you doing this to me?," J.A. 58, indicates that the emergency situation that the district court had assumed passed. And the allegation that Mr. Wise was left on the gurney in a painful position for two hours without being seen by medical staff (J.A. 36, 59) belies the district court's conclusion that Officer Cook used force to expedite the ability to seek medical attention. Mr. Wise "was never seen by anyone from the . . . medical staff" for his seizure or pain. J.A. 59.

To the contrary, taking the allegations (or even the extrinsic evidence) as a whole and drawing all reasonable inferences in Mr. Wise's favor, Officer Cook had no need to beat Mr. Wise and slam him down painfully on a gurney while he was not resisting or combative. The officer made no effort to temper the severity of his forceful response as he left Mr. Wise painfully strapped on the gurney for hours despite his pleas for relief. All of these allegations together support an inference of malicious and sadistic intent by the officer. *See Iko*, 535 F.3d at 239–40. Therefore,

even if it were proper to consider extrinsic evidence, Mr. Wise's allegations, taken in the light most favorable to the pro se plaintiff and drawing all reasonable inferences in his favor, show that he has stated a plausible excessive force claim.

Finally, the court's reasoning was incorrect because the evidence that it pointed to (by citing J.A. 118–22 (Ex. 2 at 2–6 of Defs.' Br.)) concerned alleged drug use *after* the September 2019 seizure incident (i.e., later drug accusations) and thus could not have impacted Officer Cook's state of mind in deciding to employ force during the September 2019 incident.

Even if the district court had been presented a motion for summary judgment instead of a motion to dismiss with respect to the excessive force claim, its decision would have been erroneous because it improperly weighed evidence and decided on questions on disputed facts against Mr. Wise, the non-moving party. But in fact Officer Cook had moved to dismiss the excessive force claim based on purportedly insufficient allegations. The allegations more than sufficiently state a claim for excessive force, and the district court erred in dismissing that claim.

## CONCLUSION

For the foregoing reasons, the district court's judgment should be reversed.

## REQUEST FOR ORAL ARGUMENT

Mr. Wise requests oral argument. Because the issues raised in this appeal involve both legal issues and factual allegations in the complaint, the Court may benefit from clarification from counsel about any questions it may have.

Respectfully submitted,

Dated: August 18, 2021

/s/ David J. Cho

Samuel Weiss
RIGHTS BEHIND BARS
416 Florida Avenue NW
Suite 26152
Washington, DC 20001
(202) 455-4399

David M. Zionts
David J. Cho
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
(202) 662-6000

*Counsel for Plaintiff-Appellant*
*Timothy S. Wise*

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 11,758 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

2.      This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point, Times New Roman font.


Dated: August 18, 2021

/s/ David J. Cho
David J. Cho
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the appellate CM/ECF system on August 18, 2021.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: August 18, 2021

/s/ David J. Cho
David J. Cho
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001